Sandoval v Leake & Watts Servs., Inc. (2020 NY Slip Op 08017)





Sandoval v Leake & Watts Servs., Inc.


2020 NY Slip Op 08017


Decided on December 29, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 29, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Sallie Manzanet-Daniels,J.P.,
Ellen Gesmer
Cynthia S. Kern
Jeffrey K. Oing
Peter H. Moulton, JJ.


Index No. 303187/13 Appeal No. 12666 Case No. 2019-01413 

[*1]Eduardo Sandoval, an Incapacitated Person by His Co-Guardians, Mayra Sandoval, et al. Plaintiffs-Respondents,
v
Leake & Watts Services, Inc., et al., Defendants-Appellants, Wendell Chavies et al., Defendants.



Defendants appeal from an order of the Supreme Court, Bronx County (Wilma Guzman, J.), entered on or about July 9, 2019, which, upon renewal, denied defendants' motions for summary judgment dismissing the complaint as against them.




Sher Tremonte LLP, New York (Amanda Ravich and Theresa Trzaskoma of counsel), for Leake and Watts Services, Inc., appellant.
Miranda Slone Sklarin Verveniotis, LLP, Mineola (Kelly M. Zic of counsel), for Asialone A. Edwards, appellant.
Rubenstein & Rynecki, Brooklyn (Harper A. Smith of counsel), for respondents.



MOULTON, J. 


In the overnight hours of June 2-3, 2012, plaintiff Eduardo Sandoval, a nonverbal adult with severe autism, was burned with a heated metal potato masher by an employee at the residential facility where he lived. Defendant Leake and Watts Services, Inc. (L&W), a nonprofit organization, operated the home where Sandoval resided along with five other intellectually and developmentally disabled adults. L&W employed defendants Asialone Edwards and Wendell Chavies as residential habilitation assistants. They were the only two staff members overseeing the residents when Sandoval was burned.
Mayra Sandoval, Sandoval's mother, and Alfredo Sandoval, his brother, as co-guardians filed a complaint on behalf of Sandoval against defendants. The complaint asserted causes of action against Edwards and Chavies for battery and negligence and sought to hold L&W vicariously liable for those torts based on the doctrine of respondeat superior. The complaint also asserted causes of action against L&W for negligent hiring, retention, supervision, and training. In addition, plaintiffs sought punitive damages against the three defendants.[FN1]
After discovery, L&W and Edwards moved for summary judgment dismissing plaintiffs' complaint against them. L&W argued that it could not be held vicariously liable for the alleged torts of Edwards or Chavies because burning a resident with a heated potato masher is manifestly outside the scope of employment. As to plaintiffs' claims for negligent hiring, retention, supervision and training, L&W asserted that nothing in the record put it on notice that Chavies or Edwards would engage in such conduct. L&W further argued that plaintiffs failed to show that better hiring, training, or supervisory practices would have prevented the incident. In addition, L&W argued that punitive damages were not warranted as a matter of law. Edwards argued that she was entitled to summary judgment based on the lack of evidence that she burned Sandoval or that she was negligent in supervising him. She similarly argued that punitive damages were not warranted as a matter of law.
Supreme Court denied the motions as untimely. Upon motions to renew and reargue Supreme Court found the motions timely but denied the motions on the merits. We now modify in part and otherwise affirm. Supreme Court erred in failing to dismiss plaintiffs' claims against L&W based on the doctrine of respondeat superior. However, Supreme Court properly found that L&W failed to establish its prima facie entitlement to summary judgment dismissing plaintiffs' claims for negligent hiring, retention, supervision, and training. Supreme Court also properly found that Edwards failed to establish her entitlement to summary judgment dismissing plaintiffs' causes of action asserted against her, including for punitive damages.[FN2]
Relevant Facts
The Potato Masher Incident
At the time of the incident, Sandoval was a 23-year-old severely [*2]autistic nonverbal resident at L&W's group home. It is uncontroverted that on the night of June 2, 2012 or in the early morning of June 3, 2012 someone burned him with a heated metal potato masher. An L&W investigation revealed that only Chavies and Edwards worked at the residence when the incident occurred. L&W suspended both employees without pay and ultimately terminated them after completing an investigation. Because Chavies failed to appear for his deposition and Sandoval was nonverbal, Edwards provided the only description of what occurred that night.
Edwards testified that on June 2, 2012 she worked the night shift, as usual, with Chavies. She explained that during her shift Sandoval was having a "behavior issue." Edwards testified that while she was watching TV in the living room, Sandoval was yelling from his bedroom. She asked Chavies to check on Sandoval; Chavies did so, but the screams continued unabated. According to Edwards, after approximately one hour of screaming Sandoval left his room and ran unclothed toward the front door. Edwards testified that she ran in front of Sandoval to block him from opening the door. She also testified that she called Chavies to help her and that he came downstairs but he first went into the kitchen. According to Edwards, Sandoval was naked and was squeezing her toward the door while mumbling. She testified that after Chavies came back from the kitchen, it took approximately 30 seconds for Chavies to get Sandoval off of her. Edwards could not see how Chavies accomplished this. According to Edwards, Chavies then pushed Sandoval back to his room. Edwards explained that the following Monday she saw "squiggly lines" on Sandoval's body while showering him. She testified that the police later told her that the burns were from a potato masher.
Edwards also gave a witness statement to the police on June 11, 2012. Her statement painted a different picture of what happened at the front door. In her statement, she described that Chavies went to help her by the door; that Chavies startled Sandoval; and that Sandoval jumped out of her way. Her statement further indicated that when Chavies and Sandoval were heading back to the bedroom, Chavies was "making physical gesters [sic], probing Edwardo Sanduval [sic] with a potato masher." Edwards' statement further stated that during this time Sandoval was "screaming."
The evidence reflects that a staff member noticed Sandoval's burns the next morning and notified the house manager. On June 4, 2012 the house manager recovered a potato masher from the kitchen that appeared to match the burns on Sandoval's body. He then notified the Office of People With Developmental Disabilities (OPWDD), the New York agency supervising the home, and Sandoval's family. On June 5, 2012, the assistant house manager filed a formal report with OPWDD and contacted 911.
The evidence further reflects that Chavies was arrested on June 13, 2012 and was charged with assault [*3]and criminal possession of a weapon (the potato masher). The police and the Bronx County District Attorney's Office investigated the incident. Sandoval's brother explained at his deposition that the District Attorney's Office told him that Chavies and Edwards each blamed the other for the incident and that they "could have been both involved" but Chavies was the "prime suspect." According to Sandoval's brother, the District Attorney's Office also told him that they lacked evidence to proceed with the criminal case because Sandoval was nonverbal. Sandoval's mother testified that the police told her that Chavies was the person who burned her son. Edwards was never arrested although the police report indicated that she "possibly participated." The record contains no further information regarding the resolution of Chavies' arrest.
Prior Complaints
Sandoval's mother testified at her deposition that before the incident she had
made complaints to L&W staff about their treatment of Sandoval on more than five occasions. She testified that her prior complaints involved other incidents where Sandoval had sustained injuries, including bruises, cuts and torn clothing while in the care of L&W. Although she did not connect the complaints to any specific employee, she did testify that before this incident she had noticed that Sandoval appeared nervous around Chavies. She specifically testified that on May 30, 2012 she noticed Sandoval shaking when he was near Chavies. At her deposition she explained that she complained to L&W's house manager about this concern. Sandoval's brother confirmed in his deposition that his mother had made complaints to L&W about Sandoval's bruises before the incident. He also testified that he had made prior complaints to L&W staff about cuts and bruises that he had observed on Sandoval. He testified that he remembered having made verbal complaints before the incident to someone named Rou and to Lisa Basante.[FN3]
L&W's Hiring Practices
Before hiring Chavies and Edwards, L&W performed a criminal background check for both employees through OPWDD, as required by the agency. L&W also performed an abuse and maltreatment check through the Office for Children and Family Services. It is uncontroverted these background checks revealed that neither employee had a criminal history and that neither employee was the subject of an indicated case of abuse or maltreatment.
However, it is also uncontroverted that L&W did not follow its own internal hiring procedures. Angela Harris, L&W's Assistant Director of Human Resources, testified at her deposition about L&W's hiring procedures. She testified that L&W requires a high school diploma for the position of residential habilitation assistant but does not require any prior experience working with the disabled. She testified that after an applicant submits a job application, it is reviewed by a hiring manager. Then, the applicant is interviewed by the house manager and by a director [*4]or an assistant director. According to Harris, if the applicant passes the interview stage, the application is referred to L&W's Human Resources for drug screening, a criminal background check through OPWDD, a State Central Registry check for abuse and maltreatment, and a check of references. Harris testified that L&W's application asks for three personal references and two professional references for the position of residential rehabilitation assistant. According to Harris, verification of at least one professional reference is required and the prior employer is typically contacted post-offer. She explained that any job offer is contingent on what the professional reference states and the response is placed in the applicant's personnel file.
Harris confirmed that Chavies was employed as a residential habilitation assistant at L&W starting in 2007. She acknowledged that Chavies had indicated on his job application that he had been "let go" from his most recent employment. His application reflected that, unlike his earlier employment as a warehouse worker and security officer, his most recent employment involved direct care services to intellectually disabled children. According to Harris's testimony, when an applicant indicates that he or she was "let go" from prior employment, L&W's procedure is to find out why by sending a letter and following up by phone about the response. Harris testified that L&W mailed a letter dated June 27, 2007 to Chavies' prior employer, Ferncliff Manor for the Retarded. However, Harris explained that Chavies' personnel file contained no response from Ferncliff Manor. Moreover, she testified that no follow up phone call was made because if it was, it would have been reflected in Chavies' file. Harris also testified that she had no knowledge as to whether anyone at L&W had ever asked Chavies about the circumstances under which he had been "let go" from Ferncliff Manor.
According to a letter from L&W, Edwards was hired effective November 16, 2010. There is no record in her personnel file that L&W checked her references, nor does L&W claim to have done so.
L&W's Training
Ruth Tokarczyk, L&W's Director of Residential Services testified about L&W's staff training. She explained that L&W conducts three days of general training for new employees. Residential habilitation assistants also receive additional training in CPR, first aid, and Strategic Crisis Intervention Prevention (SCIP). The Director testified that the purpose of SCIP training is to teach strategies to residential habilitation assistants for crisis prevention and intervention. She explained that the training is taught by a state-certified instructor over four days and is followed by written tests. The record reflects that Chavies received a certificate that he completed his first SCIP course on August 1, 2007 over a period of three days (not four days as the Director testified). The record also reflects that Chavies attended one SCIP re[*5]-recertification course in 2011 and that Edwards attended SCIP training in 2010 and refresher courses in 2011 and 2012.
Notably, the SCIP materials describe the reasons for the trainings, including to "[d]ecrease incidents of abuse through increasing an awareness of the definition and the causative factors of abuse." Thus, the trainings discuss how to handle the residents' "Challenging Behaviors" as well as the stress inherent in the job. The materials note the "Common Emotional Reactions" that staff may experience while dealing with a resident who is acting out—including "Anger." The materials also note that while unacceptable, there is a potential that staff might "lose control and strike or verbally abuse a person." The materials also list some possible causes of abuse including "Staffing Problems"; "Bringing personal problems to work"; and "Feeling stressed, overwhelmed and overworked." The training materials discuss ways to prevent abuse including "know yourself and understand your threshold of frustration" and recommends "ongoing staff training programs."[FN4]
Discussion
Initially, we agree with L&W that it cannot be held vicariously liable for the alleged torts of Chavies and/or Edwards. Contrary to Supreme Court's finding, no issue of fact exists as to whether L&W's policy with respect to physical confrontations would permit the act in question. It is beyond dispute that the burning of a resident with a heated potato masher is not an act committed in furtherance of the employer's business and within the scope of employment (see Rivera v State of New York, 34 NY3d 383, 389 [2019]). However, Supreme Court properly found that L&W failed to establish its prima facie entitlement to summary judgment dismissing plaintiffs' claims for negligent hiring, retention, supervision, and training.
"Negligence is not a stereotyped thing, but, as courts have wisely said, it is a matter of time, place and circumstance; and the same act of a defendant may be a breach of duty toward one person while not a breach of duty toward another" (Levine v City of New York, 309 NY 88, 92-93 [1955]). In this appeal, L&W acknowledges that it "Serves New York City's Most Vulnerable and Neediest" by providing residential services to developmentally disabled individuals. By their very nature these residential services are primarily provided outside of the watchful eye of anyone other than residential staff particularly in the overnight hours. Moreover, by their very nature the services are provided by residential staff that face difficult emotional challenges in caring for the disabled residents. Therefore, the temporal and environmental context of plaintiffs' negligence claims herein make them particularly ill-suited for summary judgment.
We find that L&W failed to establish its prima facie entitlement to summary judgment dismissing plaintiffs' negligence claims. L&W argues that plaintiffs' negligent hiring claims fail because nothing in the record demonstrates [*6]that it was on notice that Chavies or Edwards had violent propensities, especially where neither employee had a criminal history or a history of abuse or maltreatment. We disagree.
"An employer may be liable for negligent hiring when it knew or should have known of the employee's propensity to commit injury even if the injury committed was not identical to the prior injury" ("Jane Doe" v Goldweber, 112 AD3d 446, 447 [1st Dept 2013]). We have held that "the depth of inquiry prior to hiring, irrespective of convictions, may vary in reasonable proportion to the responsibilities of the proposed employment" (Ford v Gildin, 200 AD2d 224, 226 [1st Dept 1994]). While L&W asserts that it had no common law duty to perform background checks, its own hiring practices appear to reflect L&W's recognition of the responsibilities inherent in the proposed employment. Thus, L&W conditions all employment offers on at least one satisfactory professional reference.
Despite this policy, L&W did not check the professional references submitted by Chavies or Edwards. Most notably, Chavies indicated on his job application that he had been "let go" from his most recent job working with intellectually disabled children. It is for the jury to determine whether L&W's lapse in obtaining satisfactory references for both employees constitutes negligent hiring under the circumstances (see e.g. Johansmeyer v New York City Dept. of Educ., 165 AD3d 634, 636 [2d Dept 2018] [Department of Education failed to make a prima facie showing entitling it to summary judgment dismissing a student's negligent hiring claim because its own submissions raised an issue of fact as to whether it took the appropriate measures to evaluate an employee's fitness to intern in the school's guidance department]; Chichester v Wallace, 150 AD3d 1073, 1075 [2d Dept 2017][employers failed to make a prima facie showing entitling them to summary judgment dismissing plaintiff's negligent hiring claim where they failed to investigate a home health aide's application for employment, including a gap in employment which would have revealed the aide's suspension from another home health agency]; Doe, 112 AD3d at 447 [professional corporation was not entitled to summary judgment dismissing the plaintiff's negligent hiring claim where the corporation failed to investigate a seven month gap in a doctor's employment that would have revealed his disciplinary history]; Andersen v Suska Plumbing, 246 AD2d 475 [1st Dept 1998][employer was not entitled to summary judgment dismissing the plaintiff's negligent hiring claim where the employer failed to check references which may have created a duty of further inquiry or supervision]; Giangrasso v Association for Help of Retarded Children, 243 AD2d 680, 680 [2d Dept 1997] [bus company was not entitled to summary judgment dismissing the plaintiff's negligent hiring claim because questions of fact existed as to the adequacy of its screening process for new employees and whether [*7]it took appropriate measures to evaluate the subject employee's fitness at the time of his hiring]; Brandt v Elghanayan, 242 AD2d 240 [1st Dept 1997][landlord defendants were not entitled to summary judgment dismissing the plaintiff's negligent hiring claim where they placed a single man in a single woman's apartment to make repairs knowing nothing about him and making no effort to obtain references]; Corbally v Sikras Realty Co., 161 AD2d 107 [1st Dept 1990][employer was not entitled to summary judgment dismissing the plaintiff's negligent hiring claim where the employer never conducted a routine background check exploring the employee's termination from his most recent prior employer]).
While L&W correctly points out that it is not known whether Chavies was "let go" for any negative reason, a movant for summary judgment bears the initial burden of presenting affirmative evidence of its entitlement to summary judgment (see Cole v Homes for the Homeless Inst., Inc., 93 AD3d 593, 594 [1st Dept 2012]). L&W does not satisfy its burden of proof by pointing to the gaps in plaintiffs' proof (see Li Xian v Tat Lee Supplies Co., Inc., 170 AD3d 538, 539 [1st Dept 2019]).
We also find that L&W failed to establish its prima facie entitlement to summary judgment dismissing plaintiffs' causes of action for negligent retention, supervision and training. As with plaintiffs' negligent hiring claims, L&W argues that these claims fail because nothing in the record indicates that it was reasonably foreseeable that Chavies or Edwards would burn Sandoval, especially because neither employee had a criminal history or history of abuse or maltreatment.
However, L&W's claim that the incident was not foreseeable is belied by its own training materials. The SCIP training materials reflect that residential staff face difficult emotional challenges in their positions, and that as a result, the potential for abuse is reasonably foreseeable. The training materials note the "Common Emotional Reactions" that staff may have including "Anger." The training materials reference the "incidents of abuse" and seek to decrease those incidents "through increasing awareness of the definition and the causative factors of abuse." The materials also reference the potential that staff might "lose control and strike or verbally abuse a person." Accordingly, L&W's assertion that the incident was not foreseeable as a matter of law is without merit.[FN5]
We are also not persuaded by L&W's argument that it is entitled to summary judgment because plaintiffs failed to establish proximate cause—i.e., that plaintiffs failed to demonstrate that the incident would have been prevented had L&W checked Chavies' and Edwards' references or had better training or supervision in place. L&W's argument is without merit because as the movant, it is L&W's burden to establish the lack of proximate cause (see Hairston v Liberty Behavioral Mgt. Corp., 157 AD3d 404, 405-406 [1st Dept 2018], lv dismissed 31 [*8]NY3d 1036 [2018][the defendants were not entitled to summary judgment dismissing the plaintiff's negligence and wrongful death claims based on a lack of causation because the defendants merely pointed to the gaps in the plaintiff's proof instead of submitting affirmative evidence establishing that their alleged negligence did not proximately cause the plaintiff's death]). In any event, L&W's causation arguments are undercut by its own hiring policy, which makes an offer of employment contingent on at least one satisfactory professional reference and by the SCIP training materials, which highlight the critical importance of "ongoing staff training" in decreasing abuse.
Finally, as to Edwards, Supreme Court properly found that she was not entitled to summary judgment dismissing plaintiffs' complaint against her. Edwards asserts that she did not burn Sandoval; that she did not know how he was burned; that she was never arrested; and that she did not negligently supervise him. Edwards' arguments are not dispositive because she has not established, as a matter of law, what happened on the night or early morning when Sandoval was burned. Notably, Edwards' witness statement contradicts her assertion that she did not know how Sandoval was burned and raises credibility issues for the jury. To the extent that a jury finds that Edwards burned Sandoval or was complicit in Chavies doing so, punitive damages might be warranted (see Marinaccio v Town of Clarence, 20 NY3d 506, 511 [2013]).
Accordingly, the order of the Supreme Court, Bronx County (Wilma Guzman, J.), entered on or about July 9, 2019, which, upon renewal, denied defendants Leake and Watts Services, Inc.'s and Asialone Edwards' motions for summary judgment dismissing the complaint as against them, should be modified, on the law, to grant Leake and Watts Services, Inc.'s motion to the extent of dismissing plaintiffs' claims against it based on respondeat superior, and otherwise affirmed, without costs.
Order, Supreme Court, Bronx County (Wilma Guzman, J.), entered on or about July 9, 2019, modified, on the law, to grant Leake and Watts Services, Inc.'s motion to the extent of dismissing plaintiffs' claims against it based on respondeat superior, and otherwise affirmed, without costs.
Opinion by Moulton, J. All concur.
Manzanet-Daniels, J.P., Gesmer, Kern, Oing, Moulton, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 29, 2020



Footnotes

Footnote 1: Unlike L&W and Edwards, Chavies did not file an answer. He also did not appear for his deposition. 

Footnote 2: Unlike Edwards, L&W did not make any arguments regarding plaintiffs' punitive damages claim on appeal.

Footnote 3:In January 2012, L&W investigated a prior complaint against Edwards which was made by another resident. L&W's investigation concluded that the resident's claim that Edwards yelled at him was not substantiated. The investigation noted that Edwards was known to be soft spoken. The investigation also concluded that the resident may have felt that Edwards yelled at him because he was very sensitive to noise.

Footnote 4:Because residential habilitation assistants are also "mandated reporters" under the Social Services Law, they receive annual training regarding their duties to report abuse. The record reflects that after Chavies and Edwards were hired they acknowledged their duties and certified that they had attended mandated reporter training. Chavies and Edwards also acknowledged that they received L&W's Employee Handbook. Among other things, the Employee Handbook prohibits violent behavior and verbal and physical abuse. It also explains employees' mandatory reporting obligations.

Footnote 5: Moreover, Sandoval's mother and brother testified that they informed L&W that they observed cuts and bruises on Sandoval. L&W maintains that the bruising does not necessarily imply abuse because, for instance, Sandoval had on at least one occasion cut his own lip. The jury is entitled to consider this evidence and determine whether it was the result of staff abuse, or whether it is attributable to other causes.