Summors v Port Auth. of N.Y. & N.J. (2022 NY Slip Op 01891)





Summors v Port Auth. of N.Y. & N.J.


2022 NY Slip Op 01891


Decided on March 17, 2022


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 17, 2022

Before: Kern, J.P., Mazzarelli, Gesmer, González, Higgitt, JJ. 


Index No. 156744/17 Appeal No. 14979 Case No. 2020-03652 

[*1]Keisha Summors, Plaintiff-Respondent,
v
The Port Authority of New York and New Jersey et al., Defendants-Appellants, "John Doe," etc., Defendant.


Rutherford & Christie, LLP, New York (David S. Rutherford of counsel), for appellants.
Mischel & Horn, P.C., New York (Lauren Bryant of counsel), for respondent.



Order, Supreme Court, New York County (Frank P. Nervo, J.), entered August 11, 2020, which denied defendants-appellants' motion for summary judgment dismissing the complaint, reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment accordingly.
Plaintiff, a maintenance worker at John F. Kennedy International Airport, alleges that she was physically assaulted by nonparty Billy Miles, an employee of defendant American Airlines. There is no dispute that plaintiff and Miles had some sort of confrontation in a bathroom located in the airport's Hangar 10, which plaintiff was in the process of cleaning. Plaintiff testified at her deposition that Miles pushed her against the bathroom door after she told him that he should not use the bathroom because the floor was wet. Miles asserts that it was plaintiff who used physical force to try to eject him from the bathroom. JFK is owned by defendant Port Authority, which leased Hangar 10 to American.
Miles testified at his deposition that he was employed by American as a fleet service worker when the incident occurred. His responsibilities were for airplane ground service, which included bringing aircraft in after they landed, unloading and loading them, and helping to push them out again for departure. He lived in Detroit, Michigan and would fly to JFK for 3-day shifts. While at JFK, he would sleep in his car in the parking lot of the Hangar. As an American employee, he was entitled to fly to and from JFK on standby flights. In order to work at JFK, he underwent a background check, and he was required to receive a clearance through Homeland Security, the FBI, and the Port Authority, which he did.
JFK's Hangar 10 contained bathrooms and a credit union that the public could use. It also had a restricted area, which Miles testified only American employees actually on duty could access. That area also contained bathrooms. Miles further testified that he had just finished a 40-hour shift at JFK when the incident occurred, and that he was off duty. He was not wearing his work uniform, although he was wearing the badge that Port Authority required him to wear so he could be identified as an authorized worker. He intended to "freshen up" in the bathroom in the public area of the hangar, before taking a flight back to Detroit. When he arrived at the bathroom, there was a wet floor sign, so he decided to sit on a nearby bench to wait. About five to ten minutes later, he checked to see if the bathroom was available, but the wet floor sign was still up. It was on Miles' third attempt to use the bathroom that the altercation with plaintiff occurred. Miles testified that, had he been on duty, he could have simply gone to the bathroom in the restricted area. He only waited because he knew that, since he was off duty, he did not have that right. After the incident, Miles was interviewed by a Port Authority officer, and he told the officer that he was not working when the incident [*2]occurred. The officer confiscated Miles's identification badge, which was returned to him a few days later.
Plaintiff claims that she was injured during the tumult and seeks damages from the Port Authority and American on theories of vicarious liability and negligent hiring, supervision and retention, and premises liability. Defendants both moved for summary judgment dismissing the complaint. In support, defendants relied on the deposition testimony of Miles and plaintiff as well as the affidavit of Anthony Gallo, who identified himself as "the Manager on Duty for Customer Operations for American at [JFK]." Defendants also submitted a Port Authority Police Criminal Complaint, which indicated that Miles was off duty at the time of the incident.[FN1]
Gallo averred that he was familiar with the incident, having arrived on the scene after it occurred. He stated that the incident occurred the day after Miles had ended his work shift, that Miles was not performing any tasks, job, function, or any actions on behalf of American, and that he had not been directed to enter the Hangar on the date of the incident. Gallo further explained that Miles was not employed by Port Authority, and that Port Authority did not supervise his work, which was performed exclusively for American. Gallo further averred that at the time Miles was hired, he was given a thorough background check, including fingerprinting and other security checks that both American and the Port Authority performed. The check was completed so that Miles could be "badged" by the Port Authority, pursuant to federal guidelines. The badge would grant him access to areas within JFK that are restricted to authorized personnel. He passed all of the background checks before receiving his identification badge. Gallo additionally asserted that Miles was trained that assaults, especially upon women, are not allowed and are not part of the duties and responsibilities of his employment with American. Finally, he stated that there were no previous complaints about Miles concerning his work at JFK.
In opposition, plaintiff argued that the Gallo affidavit was wholly conclusory, because it failed to attach or refer to any time or attendance records that would confirm that Miles was not working at the time of the incident, did not include any evidence regarding what Miles's job duties were, and did not offer any corroborating evidence related to the training Miles had received. Plaintiff further asserted that the affidavit was carefully tailored to avoid liability.
The court denied defendants' summary judgment motion, finding that the Gallo affidavit was insufficient to satisfy their prima facie burden establishing that they were not vicariously liable for Miles's conduct. The court observed that Gallo did not demonstrate that he had personal knowledge of the incident, and that, as a representative of American, he did not explain how he knew that the Port Authority had not directed Miles's actions. The court also [*3]found the affidavit to be tailored narrowly to the specific defense, and that Gallo's statement about the training Miles received was not credible. The court further found that defendants' contention that Miles was off duty on the day of the incident was not supported by any evidence, such as timesheets.
With respect to plaintiff's claim that defendants failed to provide plaintiff with a safe and secure premises, the court held that the Port Authority did not satisfy its initial burden of showing that it was not aware of similar assaults in the Hangar.
Under the doctrine of respondeat superior, an employer may be held vicariously liable for intentional torts committed by employees acting within the scope of their employment, as long as those acts were "generally foreseeable and a natural incident of the employment" (see Rivera v State of New York, 34 NY3d 383, 389 [2019]). Where the material facts are not in dispute, the question whether respondeat superior liability attaches is one of law and can be determined on a motion for summary judgment (id. at 390). Here the threshold question is whether Miles was even working, or under the direction of American, at the time of the incident. Plaintiff points to perceived infirmities in the Gallo affidavit on this question, asserting that the statement that Miles was off duty and not being directed by his employer or anyone else was conclusory since it failed to refer to time sheets or other documentary evidence. Thus, she maintains, defendants failed to satisfy their prima facie burden on summary judgment. However, plaintiff ignores that defendants also attached the deposition transcript of Miles, who testified that he was not working at the time of the incident. This was sufficient to at least satisfy defendants' prima facie burden (see Malenda v Great Atl. & Pac. Tea Co., Inc., 50 AD3d 972, 972-973 [2d Dept 2008]).
Because the testimony of Miles, who, notably, is not a party to this action, was that he was not on duty when the altercation occurred, defendants shifted the burden on the issue of respondeat superior.[FN2] Moreover, Miles's testimony about his job responsibilities — escorting planes in and out, and loading and unloading luggage — established prima facie that the foreseeability element of respondeat superior liability was not present. The alleged assault bore no connection to plaintiff's work duties, and thus was not "in furtherance of any employer-related goal whatsoever" (Rivera at 390).
Plaintiff claims that, even if defendants met their burden, she raised an issue of fact by pointing to the fact that Miles was wearing his American Airlines badge. However, that fact, without more, is not probative of whether American has liability. What is relevant is whether Miles was actually carrying out the duties of his employer at the time of the incident, and plaintiff failed to offer any evidence to contradict Miles's testimony that he was in the process of freshening up to go home, hours after [*4]he had completed his shift. American cannot be responsible for personal errands performed by its employee while he was off duty (see Johnson v Daily News, 34 NY2d 33 [1974]).
Plaintiff similarly argues that Gallo's affidavit was too vague to shift the summary judgment burden on whether defendants were negligent in their hiring, retention and supervision of Miles. Such a claim is made out when a plaintiff can establish that the employer was on notice that its employee had a propensity to commit the acts that form the basis of the complaint (see Sandoval v Leake & Watts Serv., Inc., 192 AD3d 91, 99 [1st Dept 2020]). To demonstrate prima facie entitlement to summary judgment on such a claim, a defendant must submit proof of lack of such notice (see White v Hampton Mgt. Co., L.L.C., 35 AD3d 243, 244 [1st Dept 2006]). Here, Gallo averred in his affidavit that Miles was given an extensive background check at the time he was hired. Additionally, Miles testified that he had to receive a security clearance to work at the airport, which was issued after background checks by the Department of Homeland Security, FBI and Port Authority. Gallo also stated that there had been no complaints about Miles at any time from the day he was hired until the day of the incident. It is true that, as plaintiff points out, Gallo did not expressly describe his job responsibilities in his affidavit, and it is thus not plain how Gallo was qualified to make that statement. However, Miles identified Gallo as a supervisor who was personally familiar with him. As such, Gallo's affidavit together with Miles' deposition testimony was sufficient to shift the burden.[FN3]
Plaintiff compares the proof put forth by defendants to that submitted by the defendants in Sandoval, in which this Court found that a prima facie case was not made out for purposes of summary judgment on a negligent hiring and retention claim. There, the employment setting was a home for intellectually and developmentally disabled adults, and the employees alleged to have physically assaulted a resident were residential habilitation assistants. The record revealed that the defendant operator of the home had internal hiring procedures that included reference checks, but that it did not check the employees' references, nor did it follow up to find out why one of the employees had been let go from a previous job. Defendant's submissions failed to account for this oversight. This Court also rejected the home's argument that the alleged assault was unforeseeable, since its own training materials referred to the difficult emotional challenges attendant to staff jobs, including the fact that staff members can have "emotional reactions" including anger, and that there was a need to reduce "incidents of abuse."
Here, in contrast, there was nothing about the environment in which Miles worked that was a natural predictor of the type of behavior alleged by plaintiff. Further, there is no reason to even speculate that any warning [*5]signs were uncovered by the background check Miles stated he was subjected to. Indeed, that federal security agencies issued him a security clearance after the background check, and maintained his clearance, is indicative that there was nothing in Miles' past or in his job history with American that should have given pause to its decision to hire him, and then to keep him employed. Accordingly, Gallo's affidavit, combined with Miles's deposition testimony, was sufficient to shift the burden on the claim for negligent hiring, training and retention. Because plaintiff did not offer any evidence to raise an issue of fact, those claims should have been dismissed as well.
Finally, it was error for the court not to dismiss the premises liability cause of action. With respect to American, Gallo asserted that he was unaware of "any incidents" in Hangar 10. Although he did not specify what types of incidents, it is evident from the context of the affidavit that the witness meant that American was not on notice of other assaults that may have occurred there. Further, Gallo referred to the fact that plaintiff believed Hangar 10 was a safe place to work, and in her own deposition, which defendants attached, she stated only that she found it troublesome that airline workers would enter the bathrooms in the main terminal while she was cleaning. She did not testify that she was aware of any problems in Hangar 10. Further, she did not testify that she had ever been physically accosted in the manner complained of here, or that she had been assaulted or had even heard of colleagues being assaulted. Additionally, plaintiff testified only to reporting the concerns she did have to her employer, not to defendants themselves. Given these facts, all of which were included as part of defendants' prima facie case, defendants established that the key element of foreseeability was missing from plaintiff's claim (see Daniels v Manhattan & Bronx Surface Tr. Operating Auth., 261 AD2d 115, 116 [1st Dept 1999]). Because plaintiff failed to introduce any evidence sufficient to raise issues of fact as to this claim, it should have been dismissed as well.
All concur except Gesmer and González, JJ., who concur in a separate memorandum by González, J. as follows:




GONZ LEZ, J. (concurring)
 

We agree with the majority that defendants have established entitlement to summary judgment and concur in the reversal of the decision below. We write separately solely to highlight our view that the Gallo affidavit is entirely without probative value and plays no part in our summary judgment analysis.
Initially, we note that a movant must not take lightly the prima facie burden imposed on a party seeking summary judgment. The movant must make a prima facie showing of entitlement to judgment by tendering evidence demonstrating the absence of any material issues of fact (Friends of Thayer Lake LLC v Brown, 27 NY3d 1039, 1043-1044 [2016]). In support of the motion for summary judgment, defendants [*6]submitted an attorney affirmation that annexed, among other things, Gallo's affidavit, and plaintiff and Miles's deposition testimony. Gallo was not present at the time of the incident. We decline to rely on Gallo's affidavit because the affidavit is conclusory in that it neither states his job duties, the duration of his employment with American Airlines nor the identity of any documents he consulted (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851 [1985]).
Nonetheless, Gallo's affidavit is not necessary to satisfy defendants' prima facie burden. The Court of Appeals has held, "[t]he fact that defendant's supporting proof was placed before the court by way of an attorney's affirmation annexing deposition testimony and other proof, rather than affidavits of fact on personal knowledge, is not fatal to the motion" (Alvarez v Prospect Hosp., 68 NY2d 320, 325 [1986]; see also Olan v Farrell Lines, 64 NY2d 1092, 1093 [1985]; Gaeta v New York News, 62 NY2d 340, 350-351 [1984]). Indeed, this Court has frequently reiterated this principle and recently held that "defendant's submission of an attorney affirmation attaching deposition testimony was sufficient to support its motion, even in the absence of an affidavit from someone with personal knowledge" (Lara v Kadir, 201 AD3d 590 [1st Dept 2022]; see also Great Ajax Operating Partnership L.P. v PCG REO Holdings, LLC 192 AD3d 420, 420 [1st Dept 2021], quoting Muniz v Bacchus, 282 AD2d 387, 388 [1st Dept 2001] ["there is no requirement that evidence be submitted by affidavit to prevail on a motion for summary judgment"]; De-Spec, Inc. v Sadick, 147 AD3d 425 [1st Dept 2017]).
We find that the transcript of the relevant depositions attached to the attorney's affirmation is sufficient to establish defendant's prima facie showing of entitlement to judgment as a matter of law. Accordingly, we concur with the majority's grant of summary judgment.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT. 
ENTERED: March 17, 2022



Footnotes

Footnote 1: Although the report notes that Miles was arrested, Miles denied that in his deposition.

Footnote 2: We reject plaintiff's position that defendants failed to establish that Miles was not employed by Port Authority. Miles was clear in his testimony that he was employed by American.

Footnote 3: We note that a movant must not take lightly the prima facie burden imposed on a party seeking summary judgment. Indeed, summary judgment must be denied when a summary judgment movant fails to make a prima facie showing of entitlement to judgment as a matter of law, regardless of the sufficiency of the opposing papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851 [1985]). Here, Gallo's affidavit should have contained greater detail; however, Miles's deposition, coupled with the affidavit, was sufficient to establish defendant's prima facie showing.